**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

———————————————————— :
                                             :
DANIEL SAMOLES, *et al.*,                    :
                                             :      Civil Action No. 12-3066 (FLW)
                         Plaintiffs,         :
                                             :
            v.                               :
                                             :      **OPINION**
LACEY TOWNSHIP, *et al.*,                     :
                                             :
                         Defendants.   :
————————————————————:

**WOLFSON, United States District Judge**:

Plaintiffs Daniel Samoles, John Samoles, and Joseph Samoles ("Plaintiffs") initiated this § 1983 action against Defendant Lacey Township Police Sergeant Michael DiBella ("DiBella"), as well as Defendants Lacey Township Police Detectives James Wood and James Veltri, and Officers Brian Flynn, Adam Ewart, Gerard Noda, Paul Sullivan, and Thomas Bruce (the "Lacey Individual Defendants") (collectively, "Defendants").[1]  This action arises out of Plaintiffs' arrests for obstruction of justice under New Jersey state law.  Plaintiffs allege that Defendants used excessive force in securing Plaintiffs in connection with the arrests, and bring a claim under 42 U.S.C. § 1983 for a violation of their federal constitutional rights.  The Complaint includes additional § 1983 claims arising from the arrests, as well as New Jersey common law claims of assault and battery, false imprisonment, malicious prosecution, negligence, and intentional infliction of emotional distress, and a claim under the New Jersey Civil Rights Act ("NJCRA").

———————————————

[1]     Lacey Township and Lacey Township Chief of Police William Nally were originally also named defendants, but were dismissed from the case on June 20, 2013.  *See* Dkt. No. 13 (Stipulation and Order of Dismissal, dated June 20, 2013).

1

Presently before the Court are two motions for summary judgment filed by DiBella and the Lacey Individual Defendants.   For the reasons that follow, the Court GRANTS DiBella's motion and GRANTS in part and DENIES in part the Lacey Individual Defendants' motion. Specifically, summary judgment is granted in Defendants' favor on all counts in the Complaint asserted by Plaintiffs John and Joseph Samoles.   Summary judgment is also granted in all Defendants' favor, with the exception of Detective Veltri, on all counts in the Complaint asserted by Daniel Samoles; summary judgment is denied for Daniel Samoles' excessive force claim against Detective Veltri.

## I.    BACKGROUND

The following facts are drawn from the parties' L. Rule 56.1 Statements of Material Facts, and are undisputed unless otherwise noted; additional facts will be set forth as necessary.

On May 27, 2010, Defendants responded to two 911 phone calls placed by individuals located at Daniel Samoles' residence at 433 Stony Point Drive in Lacey Township, New Jersey. Lacey Ind. Def. Facts, ¶ 2; DiBella Facts, ¶ 20-21, 29; Pl. Counter. Facts, ¶ 6-7.   One call was placed by Bessie Patten, who had been present in the home but ran out at some point prior to Defendants' arrival.   Lacey Ind. Def. Facts, ¶ 3; Pl. Response to Lacey Ind. Def. Facts, ¶ 3. Ms. Patten's 911 call informed the dispatcher that she had been held at gunpoint by Plaintiffs while in Daniel Samoles' house.   Lacey Ind. Def. Facts, ¶ 3.[2]   The other call was placed by Daniel Samoles, who told the dispatcher that Ms. Patten had threatened Plaintiffs with a gun in order to extort money from them.   *Id.* at ¶ 2.   When Defendants arrived at Daniel Samoles'

---

[2]      Although Plaintiffs dispute the substantive truth of Ms. Patten's call, that is not material to the resolution of Plaintiffs' claims; moreover, Plaintiffs do not dispute that Ms. Patten placed the call, or that the police responded based at least in part because of her call.   *See, e.g.*, DiBella Facts, ¶ 28-29 (admitted to by Plaintiffs, and stating that "the two calls to the police mentioned that a gun was involved").

2

residence, they first encountered Ms. Patten outside; when they examined her, Defendants observed Ms. Patten with a laceration on her lip.   *Id.* at ¶ 3.   According to Ms. Patten, she received the cut when one of the Plaintiffs placed a gun in her mouth.[3]   *Id.*   At this point, Defendants instructed, over police bullhorn, that Plaintiffs exit the home.   *Id.* at ¶ 4; DiBella Facts, ¶¶ 22-23; *see also* Pl. Counter. Facts, ¶ 7-9.[4]   When Plaintiffs failed to exit, Defendants requested that the dispatcher contact Plaintiffs on their home phone to relay the instructions to exit; upon being contacted by the dispatcher, Plaintiffs began to exit the residence one at a time. *See* Pl. Counter. Facts, ¶ 8; Lacey Ind. Def. Facts, ¶ 4.

All three Plaintiffs followed Defendants' instructions to kneel on the ground shortly after exiting.   Pl. Counter. Facts, ¶ 10.   Daniel Samoles, however, did not immediately comply with Defendants' instructions to lay down flat on the ground; because of this, and after giving Daniel Samoles several seconds in which to heed and comply with these instructions, Officer Ewart pushed Daniel Samoles from behind, forcing him onto the ground.   *Id.* at ¶¶ 11-12; Lacey Ind. Def. Facts, ¶ 5; DiBella Facts, ¶¶ 40.   Once all Plaintiffs were on the ground with their hands secured behind their backs, Defendants entered Daniel Samoles' residence to determine if anyone else was present, as well as to locate the firearm referenced in the 911 phone calls.   Pl. Counter. Facts, ¶ 15; Lacey Ind. Def. Facts, ¶ 9; DiBella Facts, ¶¶ 28-29, 61.   Throughout this entire time, Defendants had their service weapons unholstered and pointed in Plaintiffs' direction.   Pl. Counter. Facts, ¶¶ 9, 13.   Also, throughout this time, Daniel Samoles was

---

[3]      Plaintiffs dispute the truth of this statement, but they do not dispute that this is what Ms. Patten told Defendants.   *See, e.g.*, DiBella Facts, ¶¶ 21.

[4]      Again, Plaintiffs dispute this fact; however, Plaintiffs' dispute appears to center on whether Plaintiffs heard Defendants' orders, not on whether the orders were actually made. Moreover, as discussed in more detail later, review of the video evidence, although lacking in sound, reveals certain Defendants standing near their vehicles and apparently using their bullhorns.   *See* Video at 18:26:20 to 18:28:26.

swearing at Defendants in response to their orders.   *See, e.g.*, Samoles Dep., T124:10-14.   The vast majority of these foregoing facts are captured by video footage from security cameras located at Daniel Samoles' residence (the "Video").   The Video is a composite comprised of four separate, soundless videos captured by security cameras installed at Daniel Samoles' home. As discussed in more detail *infra*, the parties do not contest the authenticity of the Video, each relying on it in their arguments.

After the home had been cleared by Defendants, Plaintiffs were placed in patrol cars and transported to the Lacey Township Police Station.   *See, e.g.*, Pl. Counter. Facts, ¶ 17. According to Daniel Samoles, upon reaching the station—but while he was still secured and handcuffed in the back of a patrol car and otherwise alone—Detective Veltri placed his service weapon against Daniel Samoles' head and verbally threatened him.   *Id.* at ¶ 18.   Once inside the station, Plaintiffs were detained before being charged with Obstruction of the Administration of Law in violation of N.J.S.A. 2C:29-1(a).   *Id.* at ¶¶ 17, 19.   Plaintiffs were initially convicted of these charges in municipal court, but later had their charges dismissed on appeal by the superior court.[5]   *Id.* at ¶ 20.   The instant lawsuit followed, with Plaintiffs filing their Complaint on May 23, 2012.

## II.   STANDARD OF REVIEW

Courts will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Fed. R. Civ. P. 56(a).   An issue is "genuine" if supported by evidence such

---

[5]   For this reason, Plaintiffs' claims do not implicate *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

that a reasonable jury could return a verdict in the non-moving party's favor.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52.   A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.   *See id.* at 252. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-moving] party."   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Nevertheless, where, as here, there is video footage related to the claims, the Court will not draw inferences that are inconsistent with the video evidence.   *See Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment . . . [and thus, t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.").   In other words, the existence in the record of a videotape capturing the events underlying a claim presents an "added wrinkle" to the usual standard which requires courts "to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'"   *Id.* at 378 (Citations omitted).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion."   *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).   The nonmoving party then carries the burden to "designate 'specific facts showing that there is a genuine issue for trial.'"   *Id.* at 324.   Moreover, the non-moving party may not rest upon the mere allegations or denials of its pleading.   *Id.* at 324; *Maidenbaum v. Bally's Park Place, Inc.*,

870 F. Supp. 1254, 1258 (D.N.J. 1994).   The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."   *Matsushita*, 475 U.S. at 586.   A mere "scintilla of evidence . . . will be insufficient."   *Anderson*, 477 U.S. at 252.

## III.   DISCUSSION

Plaintiffs assert several constitutional and state law claims against Defendants arising out of the events leading up to Plaintiffs' arrests on May 27, 2010.   Specifically, Plaintiffs allege, under § 1983 and against all Defendants, (i) in Count One a claim of excessive force, (ii) in Count Two a claim of illegal search and seizure, (iii) in Count Three a claim of false arrest and imprisonment, (iv) in Count Four a claim for failure to intervene, and (v) in Count Five a claim for malicious prosecution.   In Count Six, Plaintiffs bring a claim under § 1983 for supervisory liability against DiBella only, and in Count Seven, Plaintiffs bring a *Monell* claim against DiBella.[6]   Additionally, in Count Eight, Plaintiffs seek prospective injunctive relief in the form of, *inter alia*, an order enjoining DiBella and the Lacey Individual Defendants from using excessive force when arresting individuals in the future.   In Counts Nine through Fourteen, Plaintiffs bring state law claims against all Defendants that are largely coterminous with Plaintiffs' § 1983 claims.   Lastly, in Count Fifteen, Plaintiffs bring a claim under the New Jersey Civil Rights Act ("NJCRA") against all Defendants, also premised on the same allegations that support their § 1983 claims.

As an initial matter, I note that, in opposing the two summary judgment motions, Plaintiffs state that they "take no position as to whether summary judgment should be granted" as to (i) the illegal search and seizure claim in Count Two, (ii) the *Monell* cause of action against DiBella in Count Seven, and (iii) the state law causes of action for assault and battery, false

---

[6]   The only remaining Defendant in Count Seven—Plaintiffs' *Monell* claim—is DiBella.

arrest/imprisonment, malicious prosecution, negligent/intentional infliction of emotional distress, and negligence in Counts Nine through Fourteen.[7]   Pl. Opp., 1.   The Court views this statement, when coupled with the lack of any briefing on the merits of these claims, as an intent by Plaintiffs to abandon these claims.[8]   Moreover, based on the undisputed facts, these claims are meritless.   There was no illegal search because the first time Defendants entered Daniel Samoles' residence, they were faced with the exigent circumstances of a gun reported inside a home that had not been secured and that may have had other unknown occupants; thus this was a constitutional permissible "protective sweep."   *See Sharrar v. Felsing*, 128 F.3d 810, 824 (3d Cir. 1997) (explaining that there is no constitutional violation arising from a protective sweep where "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene"); *see also Maryland v. Buie*, 494 U.S. 325, 335-36 (1990) ("[A] protective sweep, aimed at protecting the arresting officers, if justified

---

[7]   Plaintiffs oppose Defendants' motions for summary judgment on all other counts of the Complaint, including, *inter alia*, Plaintiffs' § 1983 false arrest and malicious prosecution claims, which I address *infra*.

[8]   District courts in and out of this Circuit routinely deem abandoned a party's claim when that party fails to present any opposition to a motion for summary judgment.   *See Desyatnik v. Atlantic Casting & Eng'g Corp.*, Civ. No. 03-cv5441, 2006 WL 120163 at * 1 (D.N.J. Jan. 17, 2006) ("[W]hen a party fails 'to offer any argument or evidence . . . in opposition to defendants' motion for summary judgement [*sic*], such claims may be deemed to have been abandoned.'" (Quoting *Curtis v. Treloar*, Civ. No. 96-cv-1239, 1998 WL 1110448 (D.N.J. Aug, 27, 1998))); *Marjac, LLC v. Trenk*, Civ. No. 06-1440 JAG, 2006 WL 3751395, at *5 n.3 (D.N.J. Dec. 19, 2006) ("Plaintiffs do not address their § 1983 claims pursuant to the Fifth Amendment, or the Fourteenth Amendment's Equal Protection clause, and have thus abandoned them."); *see also Testa v. Town of Madison*, Civ. No. 04-185-B-W, 2005 WL 2365319, at * 12 (D.Me. Sept. 26, 2005); *Bayne v. Provost*, Civ. No. 1:04 CV 44, 2005 WL 1871182, at * 4 (N.D.N.Y. Aug. 4, 2005); *Mack v. St. Mobile Aerospace Eng'g, Inc.*, Civ. No. 04-0307-BH-B, 2005 WL 1768646, at * 29 (S.D. Ala. July 26, 2005); *Akins Foods, Inc. v. Am. and Foreign Ins. Co.*, No. C04-2195JLR, 2005 WL 2090678, at *4 n. 8 (W.D. Wash. Aug. 30, 2005); *Moss v. Technicolor, Inc.*, Civ. No. CV-99-05601-WJR (Mcx), 2001 WL 1472673, at * 16 (C.D.Cal. May 4, 2001).

by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found. The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the arrest and depart the premises."). And the later search of the residence was done pursuant to a valid search warrant. Plaintiffs' *Monell* claim against DiBella is similarly meritless. Even assuming that a *Monell* claim could properly be asserted against a defendant such as DiBella, that claim would fail here because Plaintiffs have failed to allege or point to facts demonstrating any official custom or policy necessary to support such a claim. *See Mulholland v. Gov't of Berks Cnty., Pa.*, 706 F.3d 227, 238 (3d Cir. 2013) ("[T]o establish municipal liability under § 1983, [a plaintiff] must show that they were deprived of 'rights, privileges, or immunities secured by the Constitution and laws,' and that the deprivation of those rights was the result of an official government policy or custom."). Finally, all of Plaintiffs' state law claims must be dismissed because they are simply based on their federal counterparts, which, as determined in my ensuing analysis, are meritless—with the exception of Daniel Samoles' excessive force claim against Detective Veltri. Accordingly, I find that summary judgment is proper on Counts Two, Seven, and Nine through Fourteen against all Defendants, as well as on Count Six as to DiBella.[9]

### A. Excessive Force

I begin by addressing Plaintiffs' excessive force claim, as this is the lynchpin for the majority of Plaintiffs' other claims. Defendants move for summary judgment on the grounds

---

[9] In that connection, I note that Plaintiffs argue that unidentified police officers stole $2000 from Daniel Samoles' residence. *See, e.g.*, Pl. Answer to Interog. ¶ 5. This alleged fact, however, is not material to any claim in the Complaint because Plaintiffs' have not brought a claim for conversion—under § 1983, *Bivens*, or otherwise—and, further, because Plaintiffs have abandoned their illegal search claim.

that the undisputed facts, including the Video evidence, show that, as a matter of law, no excessive force violation occurred, and that, even if, *arguendo*, there is a dispute about whether any Defendants used reasonable force, Plaintiffs' claim is nevertheless barred by the doctrine of qualified immunity.   In that connection, all parties rely heavily upon the Video capturing the incident underlying Plaintiffs' claim.

As already noted, Defendants' motions for summary judgment require the Court to view the facts surrounding Plaintiffs' excessive force claim in the light most favorable to Plaintiffs. Nevertheless, in accordance with *Scott v. Harris*, the Court will not draw inferences in Plaintiffs' favor that are inconsistent with the Video evidence.   550 U.S. 372, 380-81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").   Accordingly, where the parties' recitation of relevant facts differ, the Court will endeavor to resolve those disputes when possible by relying on the facts depicted in the Video.   Indeed, all parties agree that the Video accurately depicts the incident that occurred on May 27, 2010.   *See* Pl. Counter. Facts, ¶ 14; Lacey Ind. Def. Facts, ¶ 9; DiBella Facts, ¶ 25.

*1. Additional Facts*

I set forth the following facts as discernable from the Video, which covers the time from when Ms. Patten arrived at and then exited Daniel Samoles' residence, prior to the arrival of Defendants, up through Defendants' entry into the residence after Plaintiffs had been secured on the front lawn.

The Video reveals that Ms. Patten arriving at Daniel Samoles residence around

approximately 6:10 p.m., and exiting it at 6:18:53 p.m, walking onto the front lawn; she can be seen wearing relatively scant clothing, and was not carrying a bag or anything else, except for what seems to be a cellphone.   *See* Video at 18:10:07, 18:18:53.   Thereafter, Defendants began arriving in patrol cars; certain Defendants met with Ms. Patten outside the residence, appearing to speak with her.   *See id.* at 18:25:35 to 18:26:20.   At this point, some Defendants approached the residence, while others remained stationed by their patrol cars, apparently using their bullhorns.   *See id.* at 18:26:42.   After a few minutes, Plaintiffs began to exit the residence, one at a time, beginning with Daniel Samoles, *id.* at 18:28:26, followed a few seconds later by John Samoles, *id.* at 18:28:39, and finally by Joseph Samoles.   *Id.* at 18:29:01.   During this time period, several Defendants can be seen standing around the area from which Plaintiffs exited, and appear to be speaking to Plaintiffs.   Eighteen seconds after Daniel Samoles left his house, he lowered himself to his knees on the lawn, and fourteen seconds after that, Officer Ewart pushed Daniel Samoles from behind causing him to lay face down, flat on the lawn.   *Id.* at 18:28:27 to 18:28:59.   John and Joseph Samoles, respectively, laid face down on the lawn thirty seconds and six seconds, respectively, from the time they exited the house.   *Id.* at 18:28:41 to 18:29:09.   Once all Plaintiffs had their hands cuffed behind their backs while still on the ground, certain Defendants entered Daniel Samoles' residence and then exited several minutes later.   *See id.* at 18:29:43 to 18:31:52.   Plaintiffs were then escorted and placed separately into the back of different patrol cars.   *See id.* at 18:33:30 to 18:39:49.

    2.    *Discussion*

    The use of excessive force can constitute an unlawful "seizure" under the Fourth Amendment.   *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Carswell v. Borough of*

*Homestead*, 381 F.3d 235, 240 (3d Cir. 2004).   When construing an excessive force claim, this Court must consider whether the officers' use of force was objectively reasonable under the circumstances, regardless of their underlying motive or intentions.   *Graham*, 490 U.S. at 397. In *Graham*, the Supreme Court expounded on the reasonableness inquiry, stating that it "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."   *Id.* at 396.   In addition, the Third Circuit has noted other relevant factors including "the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time."   *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007); *see also Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir. 2006); *Doby v. DeCrescenzo*, 171 F.3d 858, 874 (3d Cir. 1999) ("Significant factors in evaluating the force used by the police are whether the person being taken into custody is resisting or attempting to resist by flight.").   When weighing these factors, courts should evaluate the officers' conduct from the officers' vantage point at the time of the incident; thus the reasonableness of a particular use of force

> must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . .   Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.   The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396-97 (internal quotations and citations omitted).

Ordinarily, the reasonableness of the use of force is an issue reserved for the jury.   *Rivas v. City of Passaic*, 365 F.3d 181, 198-199 (3d Cir. 2004).   Nonetheless, "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances."   *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004) (citations omitted); *Gilles v. Davis*, 427 F.3d 197, 207 (3d Cir. 2005).

In the present case, the first issue in evaluating Plaintiffs' claims is whether, construing the evidence in the light most favorable to Plaintiffs, there is sufficient evidence from which a trier of fact could reasonably conclude that Defendants' use of force was objectively unreasonable under the circumstances.   *Thomas v. City of Erie*, 236 F. App'x 772, 776 (3d Cir. 2007).   Again, the Court accepts Plaintiffs' version of the incident as true, but only insofar as that version is consistent with what occurred in the video footage of the incident.   *Scott*, 550 U.S. at 380-81.

Plaintiffs' excessive force claims are straightforward and relatively limited in nature to two discrete instances of alleged excessive force.   First, Plaintiffs contend that, after their exit from the house, (i) Defendants used excessive force by having their firearms unholstered and pointed at Plaintiffs while trying to secure them, and, (ii) more specifically, that Officer Ewart used excessive force when Officer Ewart forcibly pushed Daniel Samoles from his knees onto the ground to fully secure him.   Both of these claims are captured entirely by the Video evidence.   In the second instance, Daniel Samoles contends that after his arrest, Detective Veltri allegedly placed a gun against Daniel Samoles' head in a threatening manner while he was alone and secured in the police vehicle.   Beyond these two instances, no other specific allegation of

excessive force can be found in Plaintiffs' statement of material facts or their brief.[10]   For this reason, the Court finds that Plaintiffs intend to limit their excessive force claim to only these two instances.

The reasonableness of an officer's use of force is determined by the totality of the circumstances, and the Third Circuit has identified a non-exhaustive list of factors to determine whether the force employed during a seizure was reasonable.   These factors include: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officer or others; (3) whether the suspect is actively resisting being seized or attempting to evade seizure by flight; (4) the possibility that the suspect is violent or dangerous; (5) the duration of the police action; (6) whether the police action takes place in the context of effecting an arrest; (7) the possibility that the suspect may be armed; and (8) the number of persons the officer must contend with at one time.   *Kopec*, 361 F.3d at 776-77.   Not all of these factors are relevant in all cases, and other factors may be considered.   *See id.*

The following, undisputed, facts are relevant to Plaintiffs' excessive force claims arising out of the incidents leading up to their arrest.   The police were summoned to Daniel Samoles' residence by two 911 phone calls, which provided conflicting stories of what had transpired in the house, but both of which alerted the police to the presence of a handgun.   Specifically, Bessie Patten told the police dispatcher that she had been in the house, where Daniel Samoles had pointed a firearm at her; Plaintiffs' phone call also informed the police dispatcher of the

---

[10]   For example, Plaintiffs do not allege, as is often common in other excessive force cases, that the officers kicked, beat, or otherwise injured Plaintiffs *after* the lawful arrest had concluded.   *See, e.g.*, *Wade v. Colaner*, No. 06-FLW-3715, 2010 WL 5479629 (D.N.J. Dec. 28, 2010).   The Court also notes that Plaintiffs' Complaint only contains generalized allegations of excessive force against Defendants, and thus provides little guidance as to the scope of Plaintiffs' claim.

presence of a firearm, although according to Plaintiffs it was Ms. Patten who had pointed the gun at them.   When Defendants arrived at Daniel Samoles' residence, they encountered Ms. Patten outside, and with apparent wounds to her mouth that she claimed had been caused by Daniel Samoles sticking the gun into her mouth.   Ms. Patten did not appear to have any firearm on her; indeed, as she was clad in a short skirt and a short-sleeved top, she did not appear to have any way to conceal a gun.   At this point, Defendants were faced with a situation in which they had strong reason to believe that there was an unsecured handgun somewhere on the property, and most likely in the residence with Plaintiffs.   Because Plaintiffs were still inside the home—presumably with the gun—and because Defendants did not, and could not, know what Plaintiffs intentions were at that point, it was objectively reasonable for Defendants to demand Plaintiffs' exit their home as quickly as possible.   The fact that it took Plaintiffs some time to heed Defendants' demands further exacerbated the apparent urgency of the situation from Defendants' perspective; based on the circumstances, it would be reasonable for Defendants to assume that Plaintiffs' delayed exit was due to Plaintiffs' intention to disobey the officers' commands, rather than their inability to hear the officers.   It is against this background that Plaintiffs' primary excessive force claims arise.

With respect to Plaintiffs' excessive force claim premised on Defendants brandishing and/or targeting their service weapons at Plaintiffs during and after their exit from Daniel Samoles' residence, Defendants move for summary judgment by arguing that, under the circumstances of this case, Defendants' actions—*i.e.*, pointing their service weapons in the direction of Plaintiffs in connection with being secured—were objectively reasonable.   I agree. As noted above, when Defendants arrived at Daniel Samoles' residence, they were operating

under information that there were individuals inside the home who had a gun.   Put differently, Defendants were concerned with their safety and the safety of others in light of the potential presence of a gun; in order to secure their safety, Defendants removed their service weapons from their holsters and aimed them at the home and Plaintiffs.   Moreover, Defendants did not discharge their service weapons; rather, as is apparent from the Video, they held them in a manner that demonstrated control and that displayed only the intent to ensure that Plaintiffs would comply with the arresting officers' commands.   *See* Video at 18:26:42 to 18:29:43.

Applying the factors espoused by the Third Circuit, I find that, as a matter of law, Defendants cannot be said to have acted gratuitously or recklessly in targeting their service weapons at Plaintiffs for the limited purpose of securing Plaintiffs and ensuring their safety and the safety of others.   The potential crime at issue upon Defendants' arrival at Daniel Samoles' home involved an alleged threat made with a firearm—a significant incident.[11]   When Defendants arrived, they encountered Ms. Patten without any firearm on her, and with no readily apparent place to conceal a gun.   Under these circumstances, it was reasonable for Defendants to believe that Plaintiffs, who were inside the house, could be armed, and thus it was reasonable for Defendants to act on the belief that Plaintiffs posed an immediate threat to the safety of Defendants and others.   This threat was exacerbated by the difficulty Defendants had in getting Plaintiffs to exit the home, as well as by their less than full, unhesitating compliance with Defendants' commands.   The duration of the police action—*i.e.*, having service weapons drawn—was limited to the time necessary to secure Plaintiffs and conduct a sweep of the house, which occurred in the context of locating and securing a firearm.   For these same reasons, there

---

[11]      I note that although Plaintiffs dispute whether Ms. Patten or Plaintiffs were the aggressors, there is no dispute that when Defendants arrived at Daniel Samoles' residence, they were acting under information that someone had been threatened with a firearm.

was a strong possibility that one of Plaintiffs was armed, and while there were several officers on the scene, Defendants had to deal with the three Plaintiffs at once, as well as Ms. Patten. *See generally Kopec*, 361 F.3d at 776-77.

Under the circumstances, Defendants' action in handling their service weapons cannot support a claim of excessive force. It was objectively reasonable for Defendants, acting on information that a gun was present and had been used in a threatening manner, to have their service weapons unholstered and targeted at Plaintiffs throughout the time necessary to secure Plaintiffs and ensure that there was no other individual present with the gun. *Wade v. Colaner*, Civ. No. 06-3715 2010 WL 1490590, at *9 (D.N.J. April 13, 2010) ("The circumstances surrounding [State Trooper] Colaner's drawing his weapon when he did, indicate a use of force that was objectively reasonable as a matter of law. The *Graham* and *Sharar* factors support this conclusion."); *Armstrong v. Sherman*, Civ. No. 09-716, 2010 WL 2483911, at *4 (D.N.J. June 4, 2010) ("[P]ointing a firearm at a person can constitute excessive force *if such action is not justified by the circumstances*." (Emphasis added.)); *see also Graham v. Connor*, 490 U.S. at 396 ("[Making an arrest] necessarily carries with it the right to use some degree of physical coercion or threat thereof to affect it."). Thus, Plaintiffs' excessive force claim premised on Defendants' pointing of their service weapons in Plaintiffs' direction fails, and summary judgment will be entered in favor of DiBella and the Lacey Individual Defendants. *See Kopec v. Tate*, 361 F.3d 776-77 (noting that summary judgment for a defendant proper on an excessive force claim where use of force objectively reasonable under circumstances).

Beyond this excessive force claim, there are simply no facts identified by Plaintiffs to show that John and Joseph Samoles suffered any other injury, as would be necessary to defeat

summary judgment.   Indeed, the remaining facts and arguments relate solely to Plaintiff Daniel Samoles.   For that reason, I find that Plaintiffs are not pursuing any other excessive force claim as to Plaintiffs John and Joseph Samoles, and I conclude that summary judgment is appropriate as to all Defendants on the excessive force claims asserted on behalf of Plaintiffs John and Joseph Samoles.   *Celotex v. Catrett*, 477 U.S. at 324.

Daniel Samoles further claims that Officer Ewart's action in pushing Daniel Samoles to the ground, in order to secure him, constitutes excessive force.   Defendants move for summary judgment on this claim on two grounds: first, that the use of force was objectively reasonable, and not excessive; and second, that even if the amount of force was not objectively reasonably, Officer Ewart is entitled to entitled to qualified immunity.   Again, although Plaintiffs' Complaint alleges that all Defendants used excessive force in effecting Daniel Samoles' arrest, in opposing summary judgment, Plaintiffs' contentions are based solely on Officer Ewart's actions, and I limit my analysis accordingly.

Again, like the forgoing analysis related to Plaintiff's excessive force claim premised on Defendants' brandishing of their firearms, weighing the factors set forth by the Third Circuit, it is apparent that Officer Ewart's action in pushing Daniel Samoles to the ground did not constitute excessive force under the circumstances.   As previously noted, the potential crime at issue was significant—a threatening disturbance was made with a firearm.   The presence of an unsecured firearm meant that it was reasonable for Officer Ewart to believe that Daniel Samoles posed an immediate threat to the safety of the officers and others.   This threat was exacerbated by the difficulty Defendants had in getting Daniel Samoles to exit his home, as well as by his less than full, unhesitating compliance with Defendants' commands to get on the ground—the

17

latter of which could reasonably be viewed as an attempt to resist arrest.   The duration of the police action was exceptionally brief—pushing Daniel Samoles from his knees to flat on the ground—and it occurred in the context of securing him and the premises to locate a firearm. Finally, as noted, there was a strong possibility that Daniel Samoles was armed, and while there were other officers on the scene, all officers had to deal with the three Plaintiffs, as well as Ms. Patten.  *See generally Kopec*, 361 F.3d at 776-77.

Thus, at the time that Daniel Samoles exited his home, Defendants, including Officer Ewart, were presented with a potentially highly dangerous situation of a seemingly uncooperative individual who also may have been armed.   Indeed, Daniel Samoles was not fully compliant with Officer Ewart's instructions.   By his own deposition testimony, Daniel Samoles acknowledges that he was cursing at the officers in response to their instructions.[12]   In short, nothing in the Video or in the parties' undisputed facts undermines the reasonableness of Officer Ewart's brief action of forcing Daniel Samoles from his knees to a position of being fully on the ground, for the purpose of ensuring that Daniel Samoles would not flee or present any threat to Officer Ewart or the other Defendants while they secured the premises.   It was reasonable for Officer Ewart to secure Daniel Samoles, who was not fully cooperative and potentially armed, as quickly as possible, by employing routine arrest procedures that included the use of a minimal amount of force.   *See id.*; *see also Lloyd v. Tassell*, 384 F. App'x 960, 964 (11th Cir. 2010) ("[W]e agree with the district court that it was constitutionally reasonable for Defendant Card to use a routine 'arm bar' takedown procedure to put Lloyd on the ground in a way that ensured Lloyd could not access any weapons he might have before he was handcuffed.").

---

[12]     For example, Daniel Samoles testified in deposition that when he was exiting his house under Defendants' orders, "there were some curse words that came out of my mouth. . . and I told [Defendants], you know, this is bullshit."   Samoles Dep., T124:10-14.

In that regard, the Supreme Court has explained that making an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396; *Ference v. Twp. of Hamilton*, 538 F. Supp. 2d at 809 (holding that some physical contact, alone, by police during arrest insufficient to show excessive force because "[w]ere it otherwise, police officers might have to rely on verbal instructions alone to effect an arrest for fear of section 1983 liability").   Thus, not every push or shove is excessive force, *id.* at 396, and in some circumstances even a "gratuitously violent shove" will still not raise to the level of excessive force.   *Saucier*, 533 U.S. at 208.   Here, the alleged force used against Daniel Samoles in this case pales in comparison to other cases in which courts found the use of force to be excessive.   *See, e.g.*, *Couden*, 446 F.3d at 496-97 (force was excessive where four officers jumped on a cooperative suspect, sprayed him with mace and pointed firearms at his head); *Rivas*, 365 F.3d at 198-200 (finding excessive force where officers beat and suffocated a suspect who was in the midst of a seizure); *see also Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 174-75 (6th Cir. 2004) (police shoved unresisting victim into a display case and fractured her arm by yanking it behind her back).   Accordingly, I conclude that Defendants have carried their burden on summary judgment by demonstrating that the use of force by Officer Ewart was objectively reasonable under the circumstances, and thus, as a matter of law, judgment must be granted in favor of Defendants on Daniel Samoles' excessive force claim premised on this action.

Moreover, even assuming *arguendo* that Officer Ewart's use of force was unreasonable, I would nevertheless conclude that he is entitled to qualified immunity.   "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"   *Bayer v. Monroe County Children & Youth Servs.*, 577 F.3d 186, 191 (3d Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Henry v. City of Erie*, 728 F.3d 275, 280-81 (3d Cir. 2013) ("To determine whether defendants are entitled to qualified immunity, we must ask whether the facts alleged show the officer's conduct violated a constitutional right, and whether the right was clearly established." (Internal quotation marks omitted.)).   This defense strikes a balance, shielding those officers from liability who mistakenly, but reasonably, believed their actions were lawful while permitting a plaintiff to recover against those defendants that knowingly violated the plaintiff's rights.   *Curley v. Klem*, 499 F.3d 199, 206-207 (3d Cir. 2007).

Accordingly, in assessing whether Officer Ewart is entitled to qualified immunity, and assuming, *arguendo*, that Officer Ewart violated Daniel Samoles' constitutional right by employing excessive force in securing him, the Court examines whether that right was clearly established.   To be "clearly established" for purposes of the qualified immunity analysis, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."   *Karnes v. Skrutski*, 62 F.3d 485, 492 (3d Cir. 1995). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."   *Saucier*, 533 U.S. at 202 (citation omitted).   The analysis of whether a right was "clearly established" "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"   *Curley*, 499 F.3d at 207 (quoting *Saucier*, 533 U.S. at 201).

Underlying this second step in the qualified immunity analysis is the principle that room

20

for reasonable disagreement about the application of the law is not enough.   For that reasons, Daniel Samoles' excessive force claim premised on being pushed to the ground can only survive this second step of the qualified immunity analysis if, given his version of events, there is no room for reasonable disagreement among police officers as to the lawfulness of Officer Ewart's actions.   "Officers who make reasonable mistakes as to what the law requires are entitled to qualified immunity."   *Green v. New Jersey State Police*, 246 F. App'x 158, 162 (3d Cir. 2007). Thus, the right at issue is "clearly established" only if "it would be unreasonable for officers to believe [that Officer Ewart's] actions would not constitute excessive force."   *Id.* at 163; *see also Tofano v. Reidel*, 61 F. Supp. 2d 289, 304 (D.N.J. 1999) ("[I]f reasonable officers could believe that a certain course of conduct is unlawful but other reasonable officers could believe that the conduct was lawful, qualified immunity attaches.").

Construing the record in the light most favorable Daniel Samoles—but in a manner not inconsistent with the evidence presented by the Video—reveals the following relevant facts and inferences identified previously in this Opinion: Daniel Samoles did not immediately or fully cooperate with Defendants' instructions to exit his home or to allow himself to be fully secured; Officer Ewart used force only in the context of handcuffing Daniel Samoles, and ceased any use of additional force once he had been completely secured; and the probable presence of a firearm, including the possibility that Daniel Samoles possessed it on his person, presented a situation in which time was of the essence for Officer Ewart.   In these circumstances, a reasonable police officer would not believe that executing a simple, routine takedown maneuver to secure an individual, followed by behind-the-back handcuffing, would constitute excessive force.[13]   At

---

[13]   Indeed, Plaintiffs have proffered no evidence that this specific action is contrary to any police procedures, or that this type of action is generally atypical in circumstances where police

the very least, there is ample room for reasonable disagreement over the fact that Officer Ewart's use of force was objectively reasonable.   I would therefore conclude that even if the Officer Ewart's use of force could be considered excessive—which I do not find is the case—Officer Ewart would nevertheless be entitled to qualified immunity on the basis that a reasonable police officer would not understand that the amount of force in this case would be considered unlawful. Accordingly, Daniel Samoles' excessive force claim premised on Officer Ewart's actions fails for this reason as well.

A different result attends for Plaintiffs' excessive force claim premised on the contention that Detective Veltri placed his firearm against Daniel Samoles while he was alone in the back of a police vehicle outside the police station, following the arrest at his home.   Pl. Opp., 17; *see also* Pl. Counter. Facts, ¶ 18 ("While still in the police car [outside Lacey Township Police Headquarters], Defendant Veltri put a gun to Plaintiff [Daniel Samoles'] head and told Plaintiff that he was going to pay for what he had done to Dixon."); Samoles Dep., T92:24-T93:4 ("I told [the police chief] what [Officer] Veltri did to me at the police station while I was in the back of the car putting the gun to my head telling me I'm going to pay for what I did to his friend . . . ."); Pl. Answer to Interog., ¶ 8 ("After Plaintiff Daniel Samoles was in custody, Defendant Veltri put a gun to his head and told him he was going to pay for what he did to Veltri's friend . . . . Plaintiff was alone in the back of a police car at police headquarters when this occurred.").[14]

For reasons unknown to this Court, the Lacey Individual Defendants, who include Detective Veltri, did not offer any response to Plaintiffs' excessive force claim directed at Detective Veltri.   And, although Plaintiffs provide little factual elaboration or argument related

---

need to secure an individual who may be armed.

[14]     Given Plaintiffs' allegations, it is clear that this excessive force claim is limited to Officer Veltri, and not to the other Lacey Individual Defendants or DiBella.

to this alleged incident, I must construe the facts in the light most favorable to Plaintiffs in deciding the Lacey Individual Defendants' motion for summary judgment. Here, Plaintiffs have asserted that Daniel Samoles was handcuffed and alone in the back of a police vehicle following his arrest; the reasonable inferences to draw in Plaintiffs' favor include the inferences that Daniel Samoles did not present a threat, was not armed, and was not attempting to flee at this time. Indeed, the only inference I can draw on the limited, undisputed facts presented is that Detective Veltri pointed his service weapon at Daniel Samoles for the purpose of intimidating him, and not for any law enforcement purpose. In such a circumstance, a police officer's brandishing of a service weapon could support a finding of excessive force in violation of the Fourth and Fourteenth Amendments. *See, e.g.*, *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995) (explaining that brandishing of a firearm gives rise to constitutional claim where circumstances show that officer had no reason to fear threat of fight or flight); *Couden v. Duffy*, 446 F.3d at 497-98 (excessive force claim may lie where circumstances demonstrate that brandishing of firearm was wholly unnecessary). For this reason, the Lacey Individual Defendants' summary judgment motion on Daniel Samoles' excessive force claim is denied with respect to Detective Veltri.[15]

In sum, Plaintiffs have failed to raise a genuine issue of material fact showing that any of Defendants used excessive force against Plaintiffs John or Joseph Samoles in the events surrounding their arrest at Daniel Samoles' residence on May 27, 2010, and thus I will grant summary judgment in Defendants' favor as to those Plaintiffs' excessive force claims.

---

[15]    As noted, Defendants have not responded in any form to Daniel Samoles' excessive force claim based on Officer Veltri's actions, and thus, they have not raised a qualified immunity defense in that regard. For this reason, I am unable to make a determination that Officer Veltri is protected by qualified immunity.

Similarly, Daniel Samoles has failed to show that any of Defendants, other than Detective Veltri, used excessive force on him.   Indeed, with respect to Officer Ewart, the undisputed Video evidence clearly shows that the use of force to push Daniel Samoles to the ground was objectively reasonable, and in any event, Officer Ewart would be entitled to qualified immunity for his actions; accordingly, summary judgment is also granted in Defendants' favor as to Daniel Samoles' excessive force claims against all Defendants, except for Detective Veltri.   Finally, Plaintiffs have asserted sufficient facts, without any opposition, to defeat the Lacey Individual Defendants' motion of summary judgment on Daniel Samoles' excessive force claim with respect to Detective Veltri only, and the Lacey Individual Defendants' motion is denied as to Daniel Samoles' excessive force claim against Detective Veltri only.

### B.        False Arrest & Malicious Prosecution Claims

All Defendants move for summary judgment on Plaintiffs' claims in Counts Three and Five for false arrest and malicious prosecution under § 1983, respectively.   In those claims, Plaintiffs contend that Defendants lacked probable cause to arrest Plaintiffs and to initiate criminal process against them.   Defendants argue that summary judgment is proper on these claims because the undisputed facts show that probable cause existed to arrest Plaintiffs, and the existence of probable cause is sufficient to defeat claims of false arrest and malicious prosecution.

Plaintiffs were charged with "Obstructing the Administration of Law" pursuant to N.J.S.A. 2C:29-1a,[16] were convicted of the charges in municipal court, and had their convictions

---

[16]        N.J.S.A. 2C:29-1(a) provides in relevant part:

A person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to

reversed on appeal to the Superior Court.    However, this disposition of Plaintiffs' charges does not end my inquiry because the existence of probable cause is determined "upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2006); *see also Gerstein v. Pugh*, 420 U.S. 103, 111 (1995) (explaining that probable cause means "facts and circumstances sufficient to warrant a prudent man into believing that the [suspect] had committed or was committing an offense." (Internal quotation marks omitted.)).    Notably, "probable cause requires more than mere suspicion . . . [but] it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."    *Orsatti v. N. J. State Police*, 71 F.3d 480, 482-83 (3d Cir. 1995). Although the question of probable cause is usually one for the jury, where the facts objectively show the existence of probable cause, summary judgment is proper.    *See Sharrar v. Felsing*, 128 F.3d at 818; *see also Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000) (courts should apply "common sense" approach to question of probable cause).

Here, the undisputed facts, as noted above, show that Defendants were summoned to Daniel Samoles' residence following two conflicting 911 phone calls from Ms. Patten and Plaintiffs, in which the only corroborated fact was the existence and brandishing of a firearm. When Defendants arrived, they faced a situation in which an unarmed and apparently injured Ms. Patten was outside, while Plaintiffs remained inside the home, presumably with the gun. Defendants instructed Plaintiffs to exit the home over their bullhorns multiple times; when Plaintiffs finally exited, none of them were initially compliant with Defendants' instructions—indeed, Daniel Samoles responded to Defendants' orders by cursing at them.

---

prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act.

Under these facts, at the time Defendants arrested Plaintiffs, there was probable cause to support a charge of obstructing the administration of law.   Plaintiffs' failure to exit their residence immediately and to comply quickly with orders to get on the ground, combined with their cursing at Defendants, would give a reasonable police officer the belief that Plaintiffs intended to prevent the officer from performing his or her official function.   Indeed, courts have found the existence of probable cause for obstruction of justice charges based on similar facts. *See, e.g.*, *Johnson ex. rel Johnson v. City of Pleasantville*, Civ. No. 05-4258(JBS), 2007 WL 1412271, at *4 (D.N.J. May 14, 2007) (finding probable cause to arrest under N.J.S.A. 2C:29-1(a) where "[d]espite repeated requests from Patrolman Simons for [arrestee] to move back while he was arresting Dorothy Lewis, Simons had to physically push her back . . . [such that by] refusing to obey his orders to move away, [arrestee] physically interfered with Simons as he performed his duties"); *see also Young v. City of Wildwood*, 323 F. App'x 99, 102-103 (3d Cir. 2009) (probable cause of obstruction exists where arrestee failed to cooperate with fingerprinting after multiple instructions); *State v. Hernandez*, 338 N.J. Super. 317, 323-24 (App. Div. 2001) (obstruction conviction proper where arrestee swore at officer and refused to follow officer's instructions).   Thus, I conclude that Defendants have shown, on the undisputed facts, that probable cause existed to arrest Plaintiffs.   For that reason, summary judgment is granted against Plaintiffs on Counts Two and Four of the Complaint.   *See Dowling v. Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988) (existence of probable cause is absolute bar to false arrest claim); *Wildoner v. Borough of Ramsey*, 162 N.J. 375, 389 (2000) (existence of probable cause is absolute bar to malicious prosecution claim).

### C.        Failure to Intervene and Supervisory Liability Claims

All Defendants move for summary judgment on Count Three, Plaintiffs' § 1983 claim for failure to intervene, and DiBella moves for summary judgment on Count Four, Plaintiffs' § 1983 claim for supervisory liability asserted against DiBella only.   Defendants contend that summary judgment is proper on both claims because there is no viable excessive force claim, and thus there is no underlying constitutional violation to support Plaintiffs' failure to intervene claim.

Here, I have found that there is no viable § 1983 claim for excessive force other than Daniel Samoles' claim that Detective Veltri allegedly brandished his service weapon in the back of the patrol vehicle.   There is, however, no corresponding allegation or fact showing that DiBella, or any other Defendant, knew or should have known that Detective Veltri would commit this alleged act.   A failure to intervene claim requires that the defendant be present at the time of, and have some knowledge of, the alleged constitutional violation, such that he or she is in a position to intervene or supervise to prevent the violation.   *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002) ("[A]n officer is only liable [under § 1983 for failure to intervene] if there is a realistic and reasonable opportunity to intervene."); *see also McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3rd Cir. 2009) (holding that a supervisor's presence "in the vicinity of the arrest at some point after [plaintiff] was handcuffed . . . is not a legally sufficient evidentiary basis" to find knowledge and acquiescence that is necessary for a supervisory liability claim).   Similarly absent from the record is any allegation or fact that DiBella instructed Detective Veltri to commit the alleged act of pointing his gun at Daniel Samoles while he was still in the patrol car, which is another necessary element of a § 1983 supervisory liability claim.   *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) ("To state a claim of

27

supervisory liability against [supervisory law enforcement officers, a plaintiff] must plead that they directed others to violate [her rights]." (Internal quotation marks omitted.)).   Thus, there are no facts to support a failure to intervene or supervisory liability claim.

In sum, Plaintiffs' § 1983 claims for failure to intervene and supervisory liability necessarily must be dismissed because there is no predicate constitutional violation.   *See* 42 U.S.C. § 1983; *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989) ("A determination that § 1983 is available to remedy a statutory or constitutional violation [requires that] . . . the plaintiff . . . assert the violation of a federal right."); *see also Santiago v. Warminster Twp.*, 629 F.3d at 130 ("[A]ny claim that supervisors directed others to violate constitutional rights necessarily includes as an element an actual violation at the hands of subordinates."). Accordingly, I conclude that summary judgment against Plaintiffs is proper on Count Three, failure to intervene, and Count Four, for supervisory liability.

### D.    NJCRA Claim

In addition to bringing claims under 42 U.S.C. § 1983, Plaintiffs also bring a claim in Count Fifteen under the New Jersey State Constitution through the NJCRA.   The NJCRA was modeled after § 1983, and thus courts in New Jersey have consistently looked at claims under the NJCRA "through the lens of § 1983."   *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011); *Chapman v. New Jersey*, Civ. No. 08-4130, 2009 WL 2634888, *3 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart . . . ."); *Armstrong v. Sherman*, Civ. No. 09-716, 2010 WL 2483911, *5 (D.N.J. June 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 . . . ."). Accordingly, Plaintiffs' New Jersey State Constitution claims will be interpreted

analogously to their § 1983 claims. *Trafton*, 799 F. Supp. 2d at 443-44; *see Hedges v. Musco*, 204 F.3d 109, 121 n.12 (3d Cir. 2000) (concluding New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment).

I have found that the only viable claim for a violation of the federal constitution in Plaintiffs' Complaint is Daniel Samoles' excessive force claim against Detective Veltri. Accordingly, Plaintiffs' claim under the NJCRA fails as to all other Defendants because there is no predicate constitutional violation. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. at 106; *Owens v. Feigin*, 194 N.J. 607, 611 (2008) ("[The NJCRA] provides a remedy against private and public defendants for a person who demonstrates that he or she has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States . . . ." (Internal quotation marks omitted.)). Thus, I conclude that summary judgment in favor of all Defendants on Plaintiffs' NJCRA claim, except for Daniel Samoles' excessive force claim against Detective Veltri, is granted.

### E. Injunctive Relief

Lastly, I reject in its entirety Plaintiffs' request for injunctive relief under § 1983. As previously stated, I have determined that, with one exception, Plaintiffs have no viable claim for any constitutional violation, and thus there is no basis on which to award injunctive relief. The only claim to survive Defendants' summary judgment motions—Daniel Samoles' excessive force claim against Detective Veltri under § 1983 and the NJCRA—does not provide sufficient justification to award injunctive relief because the record is devoid of facts establishing that Daniel Samoles is substantially likely to suffer an excessive use of force injury under similar

circumstances in the future.   *See Blakeney v. Marsico*, 340 F. App'x 778, 780 (3d Cir. 2009) (dismissing claim for declaratory relief where plaintiff did not allege he would be subject to constitutional violations in the future); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The speculative nature of [plaintiff's] claim of future injury requires a finding that this prerequisite of equitable relief [*i.e.*, the likelihood of substantial and immediate irreparable injury] has not been fulfilled.").   "While a § 1983 plaintiff's allegation that he has suffered from unconstitutional practices may be sufficient to establish standing to sue for damages, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . .'"   *Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)).   Furthermore, the injunctive relief sought by Plaintiffs essentially demands that this Court order Defendants to follow the law, which courts have historically declined to entertain.   *E.g.*, *Sixth Angel Shepherd Rescue, Inc. v. West*, 477 F. App'x 903, 909 (3d Cir. 2012).   Accordingly, the Court grants summary judgment in favor of all Defendants on Plaintiffs' claim for injunctive relief.

**CONCLUSION**

In conclusion, Plaintiffs John and Joseph Samoles have failed to identify any facts supporting a constitutional violation under § 1983 or the NJCRA, or a violation of state law, by any named Defendant; accordingly, summary judgment is granted in Defendants' favor on all counts in the Complaint asserted by those Plaintiffs.   Similarly, Plaintiff Daniel Samoles has failed to establish a constitutional violation under § 1983 or the NJCRA, or a violation of state law, on the part of DiBella or Officers Wood, Flynn, Ewart, Noda, Sullivan or Bruce; accordingly, summary judgment is granted in those Defendants' favor on all counts in the

Complaint.   The only surviving claims in the Complaint is Daniel Samoles' excessive force

claim against Detective Veltri premised solely on Detective Veltri's alleged actions while Daniel

Samoles was in the patrol car outside the police station; summary judgment in favor of Detective

Veltri is denied as to this claim in Counts One and Fifteen only; summary judgment is granted in

Detective Veltri's favor on all other counts.


Date: June 11, 2014                                     /s/ Freda L. Wolfson

                                                        The Honorable Freda L. Wolfson
                                                        United States District Judge

31